# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CELISHA S. TOWERS,

    **Plaintiff,**

v.                                    Case No. 17-2615-JAR-TJJ

WYANDOTTE COUNTY SHERIFF'S
OFFICE, ET AL.,

    **Defendants.**

## MEMORANDUM AND ORDER

    Plaintiff Celisha S. Towers brought this *pro se* action against her former employer, Defendant Unified Government of Wyandotte County ("Unified Government"), and her union representative, Defendant Fraternal Order of Police, Wyandotte County Lodge #40 ("FOP"), alleging employment discrimination claims under Title VII of the Civil Rights Act of 1964.[1] Before the Court are the Unified Government's Amended Motion to Enforce Settlement Agreement (Doc. 43) and the FOP's Motion to Enforce Settlement Agreement, Impose Sanctions, and Award Attorney's Fees (Doc. 34). The motions are fully briefed, and the Court is prepared to rule. For the reasons set forth more fully below, the Court grants the Unified Government's motion, grants the FOP's motion with respect to enforcement of the settlement agreement, and denies the FOP's request for attorney's fees.

---

[1] Although Plaintiff initially named the Wyandotte County Sheriff's Office as a defendant, on October 4, 2018, United States Magistrate Judge Teresa J. James issued an Order (Doc. 44) granting the Unified Government's Motion to Substitute Party Defendant, which substituted the Unified Government as a defendant in place of the Sheriff's Office.

## I. Plaintiff's Supplemental Response

As an initial matter, on November 5, 2018, after the motions were fully briefed, Plaintiff filed an additional pleading opposing both the FOP's and the Unified Government's motions to enforce settlement (Doc. 52).[2] The FOP responded to Plaintiff's supplemental filing on November 19, 2018, arguing that the Court should construe the filing as a surreply and disregard it because Plaintiff did not seek leave of court in accordance with the Local Rules.[3]

The Court agrees with the FOP that Plaintiff's November 5 filing is properly construed as a surreply. D. Kan. Rule 15.1 governs the filing of pleadings that may not be filed as a matter of right, including surreplies. Under that rule, a party seeking leave to file a surreply is to attach its proposed filing to the motion for the court's review.[4] Here, Plaintiff simply filed her surreply without leave of court. The Court is mindful that "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to those new materials."[5] However, neither the FOP nor the Unified Government relied on new material or new arguments in their reply briefs. Moreover, Plaintiff makes no new arguments in her surreply, and except for the addition of a settlement document containing an FOP representative's notarized signature, her surreply is in fact nearly identical to her Response to the Unified Government's motion to enforce settlement agreement.[6] Therefore, the Court denies

---

[2] Plaintiff's additional pleading is titled, "Plaintiff's Motion Opposing Defendant Fraternal Order of Police Wyandotte County, Lodge #40, and Unified Govt. of Wyandotte County, Kansas City Kansas/ Wyandotte County Sheriff Office Motion to Enforce Settlement Agreement, Deny Impose Sanctions, and Deny Award of Attorney's Fees."

[3] Doc. 57.

[4] D. Kan. Rule 15.1.

[5] *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (citation omitted).

[6] Doc. 46; *cf. Jenkins-Dyer v. Wood*, No. 13-cv-2489-JAR, 2014 WL 4261279, at *2 (D. Kan. Aug. 29, 2014) (allowing a *pro se* plaintiff to file surreplies absent both a motion for leave to file and new arguments in the defendants' replies when the plaintiff cited new authorities and made new arguments in her surreply and the case had a convoluted procedural history).

Plaintiff leave to file a surreply, strikes her supplemental filing from the record, and disregards that filing in issuing this Order.

**II.     Background**

In a July 15, 2016 letter, Wyandotte County Sheriff Donald Ash notified Plaintiff, a Sheriff's Deputy, that her employment with the Wyandotte County Sheriff's Office ("Sheriff's Office") was terminated effective July 7, 2016 for violating the Unified Government's residency policy.[7]  Subsequently, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and was issued a right-to-sue letter.  Plaintiff filed this lawsuit on October 23, 2017, claiming she was discharged because of her race in violation of Title VII.

On July 10, 2018, Plaintiff and Jane Wilson, an attorney with the Unified Government's Legal Department, discussed settling Plaintiff's case over email.  Plaintiff indicated a willingness to settle her lawsuit against the Sheriff's Office if (1) the termination of her employment was removed from her record, (2) in lieu of termination, her record showed she had resigned, and (3) she was provided with a letter of recommendation from the Sheriff and Undersheriff on company letterhead.[8]  When Wilson responded that the Sheriff's Office was unable to provide a letter of recommendation, Plaintiff stated that she would still be willing to "vacate proceedings" if her termination was changed to a resignation.[9]  Later on July 10, Henry Couchman, also counsel for the Unified Government, emailed Plaintiff the following settlement offer:

> The Unified Government agrees to convert your termination to a resignation in return for your agreement to release all claims against the Unified Government and its employees and Sheriff Ash and to dismiss your lawsuit with prejudice.  Each party will be responsible for its own costs.  We will draw up a settlement agreement with these terms and will take the necessary steps to see

---

[7] Doc. 43-1, Ex. 1.

[8] Doc. 43-1, Ex. 2.

[9] *Id.*

3

> that your personnel file reflects that you resigned from your
> employment. We will provide you with documentation to confirm
> that we have taken these steps. If you want to draft a brief letter of
> resignation, we can place it in your personnel file. We will also
> draw up a Stipulation of Dismissal for filing with the Court.[10]

Couchman concluded the email by stating, "If these terms are satisfactory, we have a settlement. Please respond ASAP and indicate your agreement. Let me know if you have any questions."[11] Shortly after, Plaintiff responded to Couchman's email stating, "Yes I agree to these terms as the Plaintiff."[12]

Also on July 10, 2018, Matthew Huntsman, the FOP's counsel, emailed Plaintiff offering not to pursue attorney's fees against Plaintiff if she agreed to dismiss her case against the FOP.[13] On July 12, Plaintiff responded through email, "Make it happen!"[14] Huntsman responded, "Thank you for your acceptance of our offer. I feel it will be most efficient [for] us to join on the settlement agreement you have reached with the Unified Government. I will contact them to let them know."[15] Plaintiff replied, "Awesome! Your [sic] welcome[.]"[16]

On July 11, 2018, Couchman emailed United States Magistrate Judge Gerald Rushfelt, stating that "[t]he plaintiff, Ms. Towers, and Defendant Wyandotte County Sheriff's Office have reached an agreement on settlement of this case," and that he anticipated the parties would file a stipulation of dismissal within twenty-one days.[17] Couchman copied Plaintiff and the FOP's

---

[10] Doc. 43-1, Ex. 3.
[11] *Id.*
[12] Doc. 43-1, Ex. 4.
[13] Doc. 35, Attach. A.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Doc. 43-1, Ex. 5.

counsel on the email. On July 18, 2018, Plaintiff communicated the existence of a settlement agreement with the FOP to Judge Rushfelt's chambers via email, stating: "The Plaintiff Celisha Towers came to a settlement agreement with the co-defendants Fraternal Order of Police. They will produce a joint stipulation agreement with the Wyandotte County Sheriff Office."[18] Plaintiff copied Couchman and Huntsman on her July 18 email to Judge Rushfelt.

Couchman emailed Plaintiff on July 18, 2018, requesting that she send him a copy of the resignation letter she planned to submit so that he could attach it to the settlement agreement.[19] The same day, Plaintiff responded "Absolutely!" and requested a copy of the settlement agreement.[20] On July 20, Plaintiff sent Couchman the contents of her resignation letter in the body of an email, stating: "Effective immediately I Celisha Towers resign from my position as Deputy Sheriff with Wyandotte County Sheriff Office."[21]

On July 20, 2018, Couchman emailed Plaintiff a draft settlement agreement ("Initial UG Agreement"), draft letter of resignation, draft revised Personal Action Notice ("PAN"), draft stipulation of dismissal, and draft order of dismissal.[22] He copied the FOP's attorneys on that email. Couchman requested that Plaintiff review the documents, and that if they met her approval, to print, sign, and return to him the Initial UG Agreement, letter of resignation, stipulation of dismissal, and order of dismissal.

Later on July 20, Plaintiff emailed Couchman and expressed disagreement with the Initial UG Agreement, stating:

---

[18] Doc. 35, Attach. B.
[19] Doc. 43-1, Ex. 7.
[20] Doc. 43-1, Ex. 8.
[21] Doc. 43-1, Ex. 9.
[22] Doc. 43-1, Ex. 10.

5

> I don't agree with the terms. That is a false resignation letter. July 7 was not my termination date. This is not what I said the settlement will be. I only agreed to release charges. I will retype the paperwork and if both defendants can't type up what the agreement was then we can continue court proceedings.[23]

Couchman responded, stating that the Initial UG Agreement reflected the terms of the agreement as he understood them from the email exchange, that the release language was standard, and that because Plaintiff's termination was effective July 7, 2016, it made sense for the resignation letter to contain the same date.[24] Plaintiff replied to Couchman's email stating her belief that the terms of the Initial UG Agreement were not what the parties had discussed.[25] She again raised the issue of the termination letter date and further stated that because the Sheriff's Office had added "parts" to the agreement, she would as well.[26] Specifically, she stated that "[i]f parties can[']t agree, then I am prepared to continue with court proceedings. The $50,000 of back pay is on the table now for me to sign this agreement."[27]

On July 24, 2018, Sean Carver, also counsel for the FOP, informed Plaintiff that he was aware that she had objected to the language in the documents prepared by the Unified Government. He sent Plaintiff a separate settlement agreement ("FOP Agreement"), order of dismissal, and stipulation of dismissal on the FOP's behalf, stating: "I have prepared the following documents to comport with the agreement you made with the Union. Please sign and return to my office. While these documents only resolve the case with the Union, I have included the UG's attorneys to keep them in the loop."[28] The FOP Agreement included two

---

[23] Doc. 43-1, Ex. 11.

[24] Doc. 43-1, Ex. 12.

[25] Doc. 43-1, Ex. 13.

[26] *Id.*

[27] *Id.*

[28] Doc. 35, Attach. E.

terms: (1) that Plaintiff dismiss her action against the FOP with prejudice, and (2) that the FOP would not seek attorney's fees and costs from Plaintiff in the case.[29]

On July 25, 2018, Couchman emailed Plaintiff a revised draft settlement agreement ("Second UG Agreement"), stipulation of dismissal, and order of dismissal. He copied the FOP's counsel and explained,

> I have revised the Settlement in a way that I hope will address your concerns. I cannot change the end date of your employment. Your resignation must be effective July 7, 2016. I have taken out the provision for a resignation letter but can put it back in . . . FOP #40 has sent you a separate proposed settlement agreement, so I have removed them . . . . I also have revised the Stipulation of Dismissal and Order of Dismissal to indicate that you are dismissing your claims against the Wyandotte County Sheriff's Office.[30]

Couchman requested that Plaintiff sign and return the Second UG Agreement if it met her approval, and offered to address any of her remaining concerns. The Second UG Agreement did not specify that Plaintiff would provide a resignation letter, but did state that Plaintiff would be allowed to resign her employment effective July 7, 2016, and that the Sheriff's Office would rescind her termination. The Second UG Agreement included a single-sentence release, stating that "Towers releases the Unified Government, the Sheriff's Office, and their current and former officials, employees, and agents, including Sheriff Donald Ash, from all claims that have arisen before the execution of this agreement," and also included the term that Plaintiff "agrees to dismiss with prejudice all claims" she made in her lawsuit.[31]

The next morning, on July 26, 2018, Plaintiff responded to Couchman's email, demanding $50,000 in back-pay to sign any order of dismissal and stating:

---

[29] *Id.*

[30] Doc. 43-1, Ex. 14.

[31] Doc. 43-1, Ex. 14-1.

> Mr. Couchman the $50,000 counter-offer of back pay settlement
> stands with the Sheriff Office in order for me to sign any order of
> dismissal. All parties can continue court proceedings. From my
> understanding we have a Mediation Notice or a Confidential
> Settlement report due to the Magistrate Judge by tomorrow on
> 7/27/2018. In addition, I will pause the Settlement Offer and
> continue court proceedings with the Fraternal Order of Police
> Lodge #40 to ensure a strong case if taken to trial until Wyandotte
> County Sheriff Office and the Unified Government decide to settle
> with my counter offer.[32]

Couchman responded, stating: "We already have agreed on a settlement. Our emails to each other document the agreement. If you are unwilling to sign a settlement agreement that contains the terms we agreed on, I will file a motion with the court to enforce the settlement."[33] Plaintiff responded: "You decided to add several terms in that settlement that I didn't agree on which made an automatic counter offer. I denied that offer and submitted a counter-offer. . . ."[34]

On July 27, 2018, after reviewing the documents the FOP emailed to her on July 24, Plaintiff advised Huntsman, "if you could get the FOP paperwork signed and I will pick up the documents to go get notorized [sic] outside the office. I prefer to use my own notoray [sic] with already signed paperwork."[35] The FOP and Plaintiff subsequently worked out logistics for getting the documents signed and notarized. On August 10, 2018, Plaintiff advised Huntsman, "I am currently on vacation. I will send an email once I return to pick the paperwork up from your office to be signed and Notorized [sic]."[36] On August 27, Plaintiff requested that a scanned copy

---

[32] Doc. 43-1, Ex. 15.

[33] Doc. 43-1, Ex. 16.

[34] Doc. 46-1 at 4.

[35] Doc 35, Attach. F.

[36] Doc. 35, Attach. G.

of the agreement signed by the FOP be emailed to her.[37] On August 31, 2018, Plaintiff emailed Huntsman, stating:

> The Plaintiff has decided to not sign any settlement offer and will maintain her full legal rights against all parties to prove her discrimination charges in Federal Court unless Ms. Towers is compensated at a minimum $50,000 of the back pay owed to her by the defendants Wyandotte County Sheriff Office and Fraternal Order of Police, and the termination removed from her record. Enjoy your day![38]

On September 24, 2018, Couchman emailed Plaintiff, informing her that he was preparing to file a motion to enforce the settlement agreement reached on July 10 and giving her a last opportunity to sign the revised documents he had emailed her on July 25.[39] Plaintiff replied, "Good Luck!"[40]

## III. Discussion

Settlements are favored by the Tenth Circuit,[41] and "[t]he trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."[42] In resolving issues of contract formation and construction of a purported settlement agreement, the Court applies state law.[43] The parties do not dispute that Kansas law applies here.

---

[37] Doc. 35, Attach. I.

[38] *Id.*

[39] Doc. 43-1, Ex. 18.

[40] *Id.*

[41] *See Desktop Direct, Inc. v. Digital Equip. Corp.*, 993 F.2d 755, 758 (10th Cir. 1993), *aff'd*, 511 U.S. 863 (1994).

[42] *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004).

[43] *Id.* Plaintiff argues that Defendants cannot bring their motions to enforce settlement in federal court because the issues involve state contract law. Doc. 46 at 15–16 and Doc. 48-1 at 1–2. However, it is well-established that a federal district court can decide a motion brought to enforce a settlement agreement in a case pending before it. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."); *Brown v. City of Bel Aire, Kan.*, No. 11-1307-MLB, 2013 WL 394204, at *2 (D. Kan. Feb. 1, 2013) (quoting

To be enforceable, a settlement must contain a "meeting of the minds on all essential terms and the parties must intend to be bound."[44] To ascertain whether the parties intended to be bound by a settlement agreement, the court determines whether the parties' "outward expression of assent is sufficient to form a contract."[45]

"Settlement agreements need not be in writing to be enforceable under Kansas law."[46] "Parties can bind themselves to a contract orally or by informal letters or e-mails."[47] Finding otherwise would have a "chilling effect" on the parties' ability to rely on such forms of communication.[48] Likewise, parties may intend to be bound by an agreement even though they contemplate incorporating into their agreement new matters to be agreed upon later.[49] Thus, "[t]he fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract."[50] However,

> Where the intent of the parties is clear that they are negotiating with a definite understanding [that] the terms of any contract are not fully agreed upon and a written formal agreement is contemplated, and no valid, enforceable contract is to exist until

---

*Hardage*, 982 F.2d at 1496) ("The district court may 'summarily enforce a settlement agreement' which was reached by the parties.").

[44] *U.S. ex rel. Quality Tr., Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *6 (D. Kan. Feb. 13, 2008).

[45] *Sw. & Assocs. v. Steven Enters., LLC*, 88 P.3d 1249, 1249 (Kan. Ct. App. 2004) (quoting 1 Lord, Williston on Contracts § 4:1, p. 241 (1990)).

[46] *Lowery v. Cty. of Riley*, 738 F. Supp. 2d 1159, 1168 (D. Kan. 2010) (citing *Lewis v. Gilbert*, 785 P.2d 1367, 1368 (Kan. Ct. App. 1990)).

[47] *Murphey v. Mid-Century Ins. Co.*, No 13-2598-JAR-JPO, 2014 WL 2619073, at *4 (D. Kan. June 12, 2014).

[48] *Id.*

[49] *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 384 (Kan. 1973).

[50] *U.S. ex rel. Quality Tr., Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *6 (D. Kan. Feb. 13, 2018) (quoting *Weil & Assocs. v. Urban Renewal Agency*, 479 P.2d 875, Syl. ¶6 (1971)).

the execution of such an agreement, a binding contract does not come into existence in the absence of such execution.[51]

"Ordinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind."[52] In Kansas, "in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it."[53]

Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.[54] Here, none of the parties request an evidentiary hearing, and a hearing is not necessary because there is no dispute of material fact bearing on the existence of the settlement or its terms.[55] Rather, all material facts pertaining to the settlement are found in email discussions between Plaintiff and Defendants, which the parties have provided to the Court. The Court finds that Plaintiff entered into two valid and enforceable settlement agreements—one with the Unified Government, and the other with the FOP.

### A. Settlement with the Unified Government

Plaintiff's and the Unified Government's actions demonstrate their intent to enter into a valid, enforceable settlement agreement. The emails produced by the Unified Government establish that Plaintiff and the Unified Government came to a meeting of the minds on all

---

[51] *Id.*

[52] *See Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001) (discussing repudiation in the context of a settlement agreement).

[53] *Id.*

[54] *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

[55] *Cf. TSYS Merch. Sols., LLC v. Pipeline Prods., Inc.*, No. 16-4024-SAC, 2016 WL 4702419, at *5 (D. Kan. Sept. 8. 2016) (quoting *Sump v. Pamida, Inc.*, No. 16-4024-SAC, 1998 WL 1054949, at *1 (D. Kan. Nov. 25, 1998)) ("No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present."); *Jaax v. Sheriff Dep't of Johnson Cty. Kan.*, No. 11-2522-CM, 2012 WL 393891, at *4 (D. Kan. Sept. 10, 2012) (finding an evidentiary hearing unwarranted when there was no substantial factual dispute regarding the terms of the agreement because the parties had entered into fully integrated written agreements).

essential terms of a settlement agreement and intended to be bound. Plaintiff and the Unified Government entered into a valid settlement agreement when Plaintiff accepted the terms of the Unified Government's settlement offer on July 10, 2018.

Specifically, in Couchman's July 10, 2018 email to Plaintiff, the Unified Government offered to convert Plaintiff's termination to a resignation in exchange for Plaintiff releasing all claims against the Unified Government, its employees, and Sheriff Ash, and dismissing her lawsuit with prejudice. Additionally, Couchman stated that each party would be responsible for its own costs. Plaintiff indicated her agreement to this offer in her email response, stating: "Yes I agree to these terms as the Plaintiff."[56] Thus, the parties agreed on the essential terms in dispute,[57] and the email describing that agreement specifically called for preparation of a final settlement document, which Couchman agreed to prepare. Moreover, when Couchman, on behalf of the Unified Government, emailed Judge Rushfelt's Chambers indicating that the two parties had agreed to settle the case and anticipated filing a stipulation of dismissal within twenty-one days, Plaintiff did not object to this statement. To the contrary, Plaintiff demonstrated her intent to be bound by the settlement agreement when Plaintiff sent Judge Rushfelt's Chambers her own email on July 18 stating that she had come to a settlement agreement "with the co-defendants Fraternal Order of Police. They will provide a joint stipulation agreement with the Wyandotte County Sheriff Office."[58]

Although a formalized document did not exist at the time of the July 10 agreement, the Court finds that the Unified Government and Plaintiff entered into a valid settlement agreement

---

[56] Doc. 43-1, Ex. 4.

[57] *See Meek & Assocs., Inc. v. First Union Ins. Grp.*, Civ. A. No. 99-2519-CM, 2002 WL 1998204, at *3 (D. Kan. Aug. 6, 2002) (finding that "the parties had an agreement as to the essential terms of the contract, in that plaintiff agreed to settle the case in exchange for payment").

[58] Doc. 35, Attach. B.

through their email conversations. The record does not suggest that either the Unified Government or Plaintiff understood that the terms of the settlement agreement would not be agreed upon until the completion of a written, formal agreement. When Plaintiff responded to Couchman's email on July 10, agreeing to the terms, she knew that the Unified Government would draft a settlement agreement reflecting those terms. Because Plaintiff did not make her agreement contingent upon reading and agreeing to all the terms in the agreement to be drafted by Couchman, the fact that Couchman included additional, standard language in his draft of the agreement does not preclude a finding that Plaintiff and the Unified Government entered into a valid settlement agreement.[59]

Plaintiff argues that she thought the draft settlement agreement prepared by Couchman constituted a counter-offer because of the existence of "additional terms." However, as previously discussed, the parties entered into a valid settlement agreement on July 10, and Plaintiff's remedy to enforce this agreement if she disagreed with the written settlement was by bringing a motion to enforce the agreed terms.[60] Further, besides the release terms, which under Kansas law are not essential terms of an agreement,[61] Plaintiff does not articulate which terms she disagrees with. In the ordinary course of settling litigation, documents implementing the settlement agreement are typically and necessarily left for future handling by the parties.[62]

---

[59] *See Brown v. City of Bel Aire, Kan.*, No. 11-1307-MLB, 2013 WL 394204, at *3 (D. Kan. Feb. 1, 2013) (enforcing a settlement agreement where the terms had not yet been drafted when the parties had a clear meeting of the minds on the essential terms and the plaintiff "did not make his agreement contingent upon reading and agreeing to the terms in the yet to be drafted settlement agreement"); *Bridges v. Arch Aluminum & Glass Co.*, No. 05-2374-CM, 2007 WL 101771, at *2 (D. Kan. Jan. 9, 2007) (citing *Meek & Assocs.*, 2002 WL 1998204, at *3) (explaining that under Kansas law, release terms are not essential terms of an agreement).

[60] *See Bridges*, 2007 WL 101771, at *2 (granting the plaintiff's motion to enforce oral settlement agreement when the parties disputed what terms were to be included in the final, written agreement).

[61] *Id.* (citing *Meek & Assocs.*, 2002 WL 1998204, at *3).

[62] *Hill v. Hutchinson Care Ctr., L.L.C.*, No. 111,615, 2015 WL 5927073, at * 7 (Kan. Ct. App. Oct. 9, 2015); *see Brown*, 2013 WL 394204, at *3 (quoting *Sump v. Pamida, Inc.*, No. 97-4085, 1998 WL 1054949, at *2

Therefore, the addition of standard release terms in the formal written agreement does not invalidate the parties' previous settlement agreement. Moreover, in response to the Unified Government's motion, Plaintiff acknowledges that the Second UG Agreement reflects the essential terms that she and the Unified Government had negotiated.[63] Thus, the Court finds that Plaintiff and the Unified Government entered into a valid, enforceable settlement agreement which could only be repudiated for bad faith or fraud.[64]

Plaintiff, however, has not shown that grounds for repudiation exist in this case. Plaintiff does not argue that the Unified Government or the Sheriff's Office engaged in bad faith or fraud, and the record does not support a finding of bad faith or fraud to justify Plaintiff's repudiation of the settlement agreement.

Instead of arguing the existence of bad faith or fraud, Plaintiff responds that it is the *Unified Government* that wrongfully repudiated the settlement agreement. First, as repudiation necessitates a valid agreement,[65] the Court notes that through this argument, Plaintiff acknowledges that she and the Unified Government entered into an enforceable settlement agreement. Specifically, Plaintiff argues that the Unified Government repudiated the settlement agreement because the Initial UG Agreement provided to Plaintiff added release terms and a joint stipulation of dismissal. Although the Initial UG Agreement contained new release terms, as previously discussed, these are not essential to the agreement,[66] especially as Plaintiff had

---

(D. Kan. Nov. 25, 1998)) ("Moreover, 'the fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement.'").

[63] *See* Doc. 46 at 3 ("The revised Agreement reflects the essential terms of the settlement offer discussed between the Wyandotte County Office/Unified Government counsel prior to the Defendant's counsel effectively repudiating the agreement . . . .").

[64] *Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001).

[65] *See id.*

[66] *Bridges v. Arch Aluminum & Glass Co.*, 2007 WL 101771, at *2 (D. Kan. Jan. 9, 2007) (citing *Meek & Assocs. v. First Union Ins. Grp.*, No. 99-2519-CM, 2002 WL 1998204, at *3 (D. Kan. Aug. 6, 2002)).

already agreed to release her claims against the Unified Government. Thus, Plaintiff's argument that the Unified Government repudiated the agreement by including standard release terms fails.

To the extent that Plaintiff may also disagree with the date of her resignation being July 7, 2015, as suggested by her emails to Couchman, the effective date of her resignation is not a material or essential term of the settlement agreement. The material terms of a settlement agreement typically include "references to the case, the parties, the plaintiff's promise to dismiss the lawsuit and release liability, and the payment of settlement monies by the defendant."[67] In *Lessley v. Hardage*, the Kansas Supreme Court found that "the precise amount to which plaintiff [was] entitled [was not] an essential term of the agreement, where the amount can readily be determined."[68] Similarly, here, the Court finds that the effective date of Plaintiff's resignation is not an essential term of the settlement—on July 10, 2016 the parties simply agreed that Plaintiff's termination would be converted to a resignation in exchange for her dismissing her lawsuit against the Unified Government. Moreover, the undisputed facts establish that Plaintiff's termination was effective July 7, 2016; it reasonably follows that her resignation would be effective on the same date, as the parties agreed that the Unified Government would "convert [Plaintiff's] termination to a resignation."[69] Thus, to the extent Plaintiff argues that specifying the date of her resignation constitutes repudiation, her argument fails.

Plaintiff also briefly argues that mutual mistake prevented the formation of a valid

---

[67] *Hill v. Hutchinson Care Ctr., L.L.C.*, No. 111,615, 2015 WL 5927073, at * 7 (Kan. Ct. App. Oct. 9, 2015).

[68] 727 P.2d 440, 448 (Kan. 1986); *see also Arrowhead Constr. Co. v. Essex Corp.*, 662 P.2d 1195, 1201–02 (Kan. 1983) (citing Restatement (Second) of Contracts § 33 (1981)) (exclusion of one term to an agreement is not fatal to the formation of a contract); *O'Neill v. Herrington*, 317 P.3d 139, 146 (Kan. Ct. App. 2014) (finding that the inclusion of the parties' former attorneys' names in a release was not a "material detail" of the contract).

[69] Doc. 43-1, Ex. 3; *see O'Neill*, at 145 (citing *NEA-Coffeyville v. U.S.C. No 445*, 996 P.2d 821, 829–31 (Kan. 2000)) (explaining that, once parties reach a settlement agreement on all material terms, "any nonmaterial discrepancies can be resolved by the court consistent with the parties' intent when they agreed upon the material terms").

settlement agreement. In Kansas, to succeed on a claim of mutual mistake, "the mistake must 'be as to past or present fact material to the contract . . . .'"[70] However, Plaintiff does not identify any mistake of material fact that caused the Unified Government and Plaintiff to enter into the settlement agreement. Instead, she argues that the Unified Government did not make the initial settlement offer because it simply repeated terms she originally proposed during negotiations. Moreover, the undisputed facts do not support a finding that there was a mutual mistake of material fact.

Therefore, under these circumstances, the Court enforces the settlement agreement reached by the Unified Government and Plaintiff on July 10, 2018, the terms of which are found in the Second UG Agreement Couchman emailed Plaintiff on July 25, 2018. Under the terms of the agreement, Plaintiff shall dismiss her claims with prejudice against the Unified Government, and the Unified Government shall rescind the termination of Plaintiff's employment and allow her to resign her employment, which will be effective July 7, 2016. Plaintiff shall sign the Second UG Agreement and stipulation of dismissal provided to her on July 25, 2018.[71]

### B. Settlement with the FOP

Similarly, the Court finds that Plaintiff and the FOP entered into a valid settlement agreement. Although Plaintiff argues that "the parties did not agree to all material terms,"[72] this

---

[70] *Krantz*, 21 P.3d at 569 (quoting *McMillin v. Farmers & Bankers Life Ins. Co.*, 206 P.2d 1061, 1065 (Kan. 1949)).

[71] Doc. 43-1, Ex. 14-1 and 14-2.

[72] Doc 48-1 at 2. In response to the FOP's motion to enforce settlement, Plaintiff also asserts that enforcing the settlement agreement and dismissing the lawsuit will deprive the Court of subject matter jurisdiction. Doc. 48-1. This argument is without merit because, as previously discussed, the Court has the power to "enforce a settlement agreement entered into by the litigants while the litigation is pending before it." *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Similarly, Plaintiff's argument that the settlement agreement "does not comply with the Code of Civil Procedure" because it "was not signed by all parties nor was it made orally before the court" is unavailing. Doc. 48-1 at 1. Nothing in the Federal Rules of Civil Procedure or the Local Rules requires that a settlement agreement be signed by all the parties or made orally before the court to be enforceable. The only requirements are a meeting of minds as to the essential terms of the agreement and an intent to be bound,

argument is contrary to the undisputed facts. Despite the parties contemplating the future execution of a formal, written settlement agreement, the emails submitted by the FOP establish that the FOP and Plaintiff came to a meeting of the minds on all essential terms of a settlement and intended to be bound.

On July 10, 2018, the FOP emailed Plaintiff offering not to pursue attorney's fees if Plaintiff agreed to dismiss her case. Plaintiff accepted the FOP's settlement offer on July 12, when she responded to the email stating, "Make it happen."[73] Thus, Plaintiff and the FOP entered into a valid settlement agreement via email on July 12, 2018. The subsequent emails whereby Plaintiff and the FOP discuss the logistics of the settlement also support the finding that Plaintiff and the FOP entered into an enforceable agreement.[74] Plaintiff further signified her acceptance and intent to be bound in her July 18, 2018 email Judge Rushfelt's Chambers, stating "[t]he Plaintiff Celisha Towers came to a settlement agreement with the co-defendants Fraternal Order of Police" and explaining that the Unified Government was preparing joint settlement documents.[75]

Moreover, as explained above, the fact that the parties did not execute a formal, written settlement agreement at the time they reached a settlement does not prevent the Court from finding the existence of a valid and enforceable settlement. The record does not support a finding that either Plaintiff or the FOP clearly intended to negotiate based on an understanding that the terms of the contract were not fully agreed upon until the execution of a formal

---

which, as discussed in the body of this Order, are present.

[73] Doc. 35, Attach. A.

[74] Doc. 35, Attachs. A, F, & G.

[75] Doc. 35, Attach. B.

settlement agreement.[76] Similarly, Plaintiff did not make her acceptance of the FOP's settlement contingent on her agreement with the terms of the written settlement agreement.[77] Therefore, the Court finds that based on Plaintiff's and the FOP's actions, the parties entered into an enforceable settlement agreement that could only be repudiated for bad faith or fraud.[78]

As with respect to her agreement with the Unified Government, Plaintiff has not established that grounds exist for repudiating her settlement with the FOP. Plaintiff does not allege that the FOP engaged in bad faith or fraud, and the record does not support a finding of bad faith or fraud. Instead, the facts demonstrate that after numerous emails with the FOP's counsel discussing the settlement, Plaintiff simply asserted in her August 31, 2018 email to counsel that she refused to sign any settlement agreement.

Under these circumstances, the Court enforces the settlement reached by the FOP and Plaintiff on July 12, 2018, the terms of which are in the FOP Agreement emailed to Plaintiff. Under the terms of the agreement, Plaintiff shall dismiss her claims with prejudice against the FOP, and the FOP shall not pursue attorney's fees. Plaintiff shall sign the FOP Agreement and stipulation of dismissal that the FOP provided to her.[79]

### C. The FOP's Request for Attorney's Fees

The FOP requests that the Court sanction Plaintiff by awarding the FOP attorney's fees associated with filing its motion to enforce the settlement agreement. Under 28 U.S.C. § 1927, "any attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

---

[76] *U.S. ex rel. Quality Tr., Inc. v. Cajun Contractors, Inc.*, No. 04-4157-SAC, 2008 WL 410121, at *6 (D. Kan. Feb. 13, 2018) (quoting *Weil & Assocs. v. Urban Renewal Agency*, 479 P.2d 875, Syl. ¶6 (Kan. 1971)).

[77] *See Brown v. City of Bel Aire, Kan.*, No. 11-1307-MLB, 2013 WL 394204, at *3 (D. Kan. Feb. 1, 2013).

[78] *Krantz v. Univ. of Kan.*, 21 P.3d 561, 567 (Kan. 2001).

[79] Doc. 35, Attach. E.

personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." The FOP argues that the Court should award attorney's fees because Plaintiff's only communicated reason for repudiating her settlement agreement with the FOP was that she wanted to "ensure a strong case" against the Unified Government.

The Court finds that Plaintiff's conduct does not warrant an order that she pay attorney's fees incurred by the FOP in bringing this motion.[80] Although ultimately unpersuasive, Plaintiff sufficiently argued why she believed she never entered into a binding settlement offer with either the FOP or the Unified Government. Moreover, in the email the FOP relies on to establish Plaintiff's inappropriate conduct, Plaintiff refers to a "Settlement Offer," not a settlement agreement, which supports her contention, albeit incorrect, that there was no binding agreement because the parties had not executed a signed, written document. Therefore, the Court denies the FOP's request for attorney's fees.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Unified Government's Amended Motion to Enforce Settlement Agreement (Doc. 43) is **granted** and that the Defendant Fraternal Order of Police, Wyandotte County Lodge #40's Motion to Enforce Settlement Agreement, Impose Sanctions, and Award Attorney's Fees (Doc. 34) is **granted in part** and **denied in part**.

---

[80] Courts are split as to whether 28 U.S.C. § 1927 applies to pro se litigants. *See Balcar v. Bell and Assocs., LLC*, 295 F. Supp. 2d 635, 639–40 (N.D.W. Va. 2003) (finding that § 1927 does not apply to *pro se* litigants, only licensed attorneys); *Wages v. IRS*, 915 F.2d 1230, 1235–36 (Alaska 1990) (finding that § 1927 applies to *pro se* litigants). The Court need not address this issue, however, as Plaintiff's conduct does not warrant an order that she pay attorney's fees.

**IT IS FURTHER ORDERED** that:

1) Plaintiff shall sign the Second UG Agreement and stipulation of dismissal that she received from the Unified Government via email on July 25, 2018 within 30 days of the date of this Order.

2) Plaintiff shall sign the FOP Agreement and stipulation of dismissal that she received via email from the FOP on July 24, 2018 within 30 days of the date of this Order.

3) The stipulation of dismissal between the Unified Government and Plaintiff shall be filed within 45 days of the date of this Order

4) The stipulation of dismissal between the FOP and Plaintiff shall be filed within 45 days of the date of this Order.

The Clerk is directed to **strike** Plaintiff's surreply (Doc. 52) from the record.

**IT IS SO ORDERED.**

Dated: December 4, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
